**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Yanez, | No. CIV 05-4180-PCT-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Bullhead City; Officer Rod Polomski; and Officer Brian Wensel | |
| Defendants. | |

Currently before the Court is Defendants City of Bullhead City, Officer Rod Polomski and Office Brian Wensel's ("Defendants") Motion for Summary Judgment. (Dkt.#32). After reviewing the pleadings and record, the Court issues the following Order.

**I.   Procedural History**

This action was originally filed by Plaintiff Michael Yanez ("Plaintiff") in the Superior Court of the State of Arizona for the County of Mohave on March 15, 2004. (Dkt.#1). Plaintiff's Amended Complaint asserts claims of: (1) assault/aggravated assault; (2) negligence/gross negligence; and (3) excessive force under 42 U.S.C. § 1983 against Defendant Officer Polomski ("Defendant Polomski"). Plaintiff asserts a claim of failure to train against Defendant Bullhead City ("Bullhead City") and illegal entry against Defendant Polomski and Defendant Officer Wensel ("Defendant Wensel") pursuant to 42 U.S.C. § 1983. (Dkt.#1). The case was removed to this Court on December 20, 2005 (Dkt.#1) and

1  Defendants filed their Answer to Plaintiff's Amended Complaint on January 27, 2006.
2  (Dkt.#6). The Court issued its Scheduling Order in this matter on April 17, 2006. (Dkt.#14).
3  On January 10, 2007, Defendants filed their instant Motion for summary judgment
4  challenging the merit of Plaintiff's assault, excessive force and municipal liability claims.
5  (Dkt.#32). The Motion is fully briefed and ripe for this Court's determination

## II.    Factual Background

On May 17, 2003, at approximately 9:15 a.m., Ms. Elizabeth Yanez went to the Bullhead City Police Department and reported that she was having a domestic problem at her house with Plaintiff.[1] The domestic problem with Plaintiff was occurring at the residence located at 1210 Gemstone Avenue in Bullhead City, Arizona. Ms. Yanez advised the police that Plaintiff had been drinking and that he had threatened suicide and may have taken some pills. Defendants Polomski and Wensel responded to the residence and met with Plaintiff's and Ms. Yanez's twelve-year old daughter, Chelsea Yanez ("Chelsea"), outside the residence. Chelsea instructed the officers that Plaintiff was inside and may have taken some pills. Defendants Polomski and Wensel then entered the residence and encountered Plaintiff. Plaintiff became upset that the officers had entered the residence and asked them to leave. This is where the facts surrounding the subsequent events diverge.

### A.    Defendants' Version

According to Defendants, which is based primarily on their own sworn recollection of events, Plaintiff repeatedly reached into his pockets and made a grasping motion with his right hand. (DSOF ¶ 9). The Defendants believed that the Plaintiff may have had a gun in his pocket. (Id.). The officers then drew their weapons and told Plaintiff to put his hands in the air. (DSOF ¶ 10). Because of Plaintiff's continued lack of cooperation with the officer's orders, Defendant Wensel, after holstering his weapon, pepper sprayed Plaintiff in an effort to get Plaintiff to obey the Defendants' orders; however, Plaintiff was able to block most of

---

[1] It is not clear if Plaintiff was Ms. Yanez's husband or ex-husband on this date. (compare DSOF ¶ 1, PSOF ¶ 1).

- 2 -

1 the spray with his shirt. (DSOF ¶ 12, 13). Because Defendant Wensel's initial efforts were
2 not successful, he attempted to pepper spray Plaintiff again. (DSOF ¶ 14). Plaintiff then
3 turned around and faced the sink, which according to Defendant Polomski contained various
4 kitchen utensils. (DSOF ¶ 15). Both officers thought that the Plaintiff may have grabbed a
5 weapon in the sink and again ordered Plaintiff to raise his hands, but Plaintiff ignored
6 Plaintiff's instructions. (DSOF ¶ 16). Officer Wensel again pepper sprayed Plaintiff and
7 Plaintiff quickly spun around with his hands chest high, which according to the officers
8 caused them to believe Plaintiff had a weapon and posed an imminent threat of danger.
9 (DSOF ¶¶ 17-19). Upon Plaintiff's spin and because of the threat of harm, Defendant
10 Polomski fired one shot from his gun striking Plaintiff in the face. (DSOF ¶ 20). The
11 officers then secured Plaintiff and located a .22 caliber pistol in a case in Plaintiff's pocket
12 and then provided medical attention to Plaintiff until paramedics arrived. (DSOF ¶ 21, 22).
13 Plaintiff survived the gun shot wound.

### B. Plaintiff's Version

15 While Plaintiff does not dispute that he had in his possession a .22 caliber pistol
16 located in a zippered pouch in his pocket (PSOF ¶ 15), he disputes the majority of events
17 described by Defendants. Upon entry into the residence, Plaintiff contends that he was fully
18 conscience and was not threatening suicide. (PSOF ¶ 8). Despite Plaintiff's requests for the
19 officers to leave, the Plaintiff did disclose, upon the officers' request, that he had in his
20 possession the .22 caliber weapon and asked the officers if they wanted Plaintiff to give it
21 to them. (PSOF ¶ 15). The officers, with guns drawn, told Plaintiff to keep the gun where
22 it was and to put his hands in the air. (PSOF ¶ 16). After a brief period of communication
23 and/or argument, Plaintiff asserts that he was pepper sprayed by Defendant Wensel two to
24 three times and that Plaintiff attempted to block the spray with his shirt. (PSOF ¶ 18-19).
25 Plaintiff then stated that he would only talk with Officer Brian Williamson. (PSOF ¶ 21).
26 After a brief period of reluctance, the officers agreed to contact officer Williamson to talk
27 to Plaintiff. (PSOF ¶ 23). Upon Defendant Wensel's movement toward the telephone to call
28 officer Williamson, Plaintiff states that Defendant Polomski pointed his weapon at Plaintiff

1   with an expression that suggested he intended to shoot Plaintiff. (PSOF ¶ 25). Plaintiff then
2   flicked water at Defendant Polomski and told him to "chill out," which resulted in the
3   Defendant Polomski firing his weapon striking Plaintiff in the face.  (PSOF ¶ 26,27).
4   Plaintiff contends that both officers were surprised by the gun shot. (PSOF ¶ 29,30).
5   Defendant Wensel then instructed Plaintiff to get on the ground as he had been shot. (PSOF
6   ¶ 31). No weapon was found in Plaintiff's hand or on the ground, other than the .22 caliber
7   gun Plaintiff told the officers about previously. (PSOF ¶ 32,33).

### III.  Summary Judgment Standard

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court views the evidence in the light most favorable to the nonmoving party and draws any reasonable inferences in the nonmoving party's favor. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).   Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### IV.  Discussion

####    A.   **Plaintiff's Excessive Force Claim under 42 U.S.C. § 1983**.

Plaintiff alleges that Defendant Polomski used excessive force during the course of the arrest in violation of his constitutional rights pursuant to 42 U.S.C. § 1983. A claim that a law enforcement official has used excessive force, deadly or not, in the course of an arrest, investigatory stop or other "seizure" of a person "is properly analyzed under the Fourth

Amendment's 'objective reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 387 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (citations omitted). The test is whether the officer's actions were objectively reasonable under the circumstances confronting him, "judged from the perspective of a reasonable officer on scene rather than with the 20/20 vision of hindsight." Id. "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' . . . 'its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain and rapidly evolving- about the amount of force that is necessary in a particular situation." Id. at 396-97. The Ninth Circuit has consistently held that whether excessive force was used by police officers in a given situation is a question of fact for the jury. See, e.g., Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (Because assessing whether a police officers' use of force was reasonable "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."); Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citing several cases for same proposition). To defeat summary judgment, a plaintiff need only show that a reasonable jury could find that the officer's use of force was excessive. Lolli v. County of Orange, 351 F.3d 410, 416 (9th Cir. 2003).

In the present case, there are two very different versions of the facts regarding the events inside the residence where Plaintiff was shot by Defendant Polomski. For purposes of summary judgment, as noted above, this Court views the facts in the light most favorable to the non-moving party, the Plaintiff. Warren, *supra.* In viewing the facts in this manner, the Court finds that a jury could find that Defendant Polomski's actions of shooting Plaintiff in the face from close range constitutes excessive force. Lolli, *supra*. From Plaintiff's perspective of the facts, Defendant Polomski shot Plaintiff based only on Plaintiff's actions of flicking water at Defendant Polomski, which likely did not pose an imminent threat of harm to Defendants Polomski or Wensel. Notably, it appears undisputed that Plaintiff did not have a gun in his hand when he was shot. While Defendant Polomski may have reasonably believed that Plaintiff reached for his weapon or for a dangerous object in the sink, that question is for the trier of fact and is not for the Court to determine as a matter of law upon summary judgment. Thus, in this Court's view, in evaluating such factors such as: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety or others; and (3) whether the suspect was actively resisting arrest or attempted to evade arrest, the Court finds there to be a fact question regarding whether Defendant Polomski improperly invoked excessive force against Plaintiff. See Drummond ex rel Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003) (noting relevant factors for excess evaluation) (citing Graham, 490 U.S. at 396)).

**B.     Qualified Immunity**

Defendant Polomski contends that even if his actions cannot be deemed to be reasonable as a matter of law, his actions were protected by qualified immunity. Qualified immunity from a civil rights action "is an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (citation omitted). "The privilege [of qualified immunity] is an *immunity from suit* rather than a mere defense to liability . . ." Id. (Emphasis original). A ruling on qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Id.. "A court required to rule upon the qualified immunity issue must

consider . . . [whether] [t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" Id. at 200 (citing Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991). If the court determines that a favorable view of the plaintiff's alleged facts show that the official's conduct violated a constitutional right, the court's next step is to ask whether such right was clearly established; this inquiry must be undertaken in light of the specific context of the case and not as a general proposition. Id. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "If the law did not put the official on notice that his conduct would be clearly unlawful, summary judgment based upon qualified immunity is appropriate." Id. The inquiry as to whether officers are entitled to qualified immunity for the use of excessive force is distinct from the inquiry on the merits of the excessive force claim; "[i]f the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205; see also Alexander v. County of Los Angeles, 64 F.3d 1315, 1322 (9th Cir. 1995).

In the present case, as explained above, the Plaintiff's constitutional right at issue is his right to be free from excessive force used by Defendant Polomski in violation of Plaintiff's Fourth Amendment rights. See Tennessee v. Garner, 471 U.S. 1, 7-8 (1985) (holding that police use of excessive force is an established constitutional violation). As such, the next critical question becomes whether Plaintiff's constitutional rights were clearly established such that a reasonable officer would realize that Defendant Polomski's conduct was unlawful. Again, in viewing the facts in the light most favorable to the Plaintiff, the Court finds that a reasonable officer would likely deem Defendant Polomski's actions of shooting Plaintiff to be unlawful. For instance, as stated above, if in fact the Plaintiff only flicked water at Defendant Polomski in a non-threatening manner, a reasonable police officer would not likely believe the use of deadly force was somehow lawful or necessary to apprehend Plaintiff. Rather, in this Court's view, the unlawfulness of such actions would

appear readily apparent to any reasonable officer and certainly not a reasonable mistake. As such, the Court will deny Defendant Polomski's request for qualified immunity.

### C.     Assault Claims

Defendants further contend that Plaintiff's assault/aggravated assault claims must be dismissed upon summary judgment because of the applicability of Arizona statutory law; specifically A.R.S. §§ 13-413 and 13-406. A.R.S. § 13-413 provides that "[n]o person . . . shall be subject to civil liability for engaging in conduct otherwise justified pursuant to the provisions of this chapter." A.R.S. § 13-406 goes on to provide in pertinent part:

> A person is justified in threatening or using physical force or deadly force against another to protect a third person if:
>
> 1. Under the circumstances as a reasonable person would believe them to be, such person would be justified . . . to protect himself against the unlawful physical force or deadly force a reasonable person would believe is threatening the third person he seeks to protect; and
>
> 2. a reasonable person would believe that such person's intervention is immediately necessary to protect the third person.

As can be read from the plain language from the statutes relied upon by Defendants, this inquiry, like the excessive force inquiry analyzed above, focuses primarily on the mind of the proverbial "reasonable person," which typically generates a factual issue more properly reserved for the jury rather than the Court. This situation is no different. Although Defendants rely upon testimony that suggests they believed Plaintiff posed a threat to Defendant Wensel (DSOF ¶ 19), this testimony is contradicted by the Plaintiff's own factual version of events based upon his sworn testimony. (PSOF ¶¶ 25-27). In other words, there is a factual issue that must first be resolved in determining whether Defendant Polomski's actions in shooting Plaintiff was justified due to the alleged imminent threat of harm Plaintiff posed to Defendant Wensel at the time. Therefore, summary judgment is not appropriate with respect to these claims.[2]

---

[2] Plaintiff also asserts that the Defendants are precluded from raising these Arizona statutes to contest Plaintiff's claims because Defendants did not raise them in their Answer. However, the Court finds that the defenses were sufficiently raised in the Answer in paragraphs 4, "entitled to all privileges and immunities extended to governmental entities

- 8 -

### D. **Municipal Liability Claim/Failure to Train**

In addition to Plaintiff's claims against Defendant Polomski, Plaintiff asserts a § 1983 claim against Bullhead City based upon its alleged failure to train its officers with respect to the existence and capabilities of Bullhead City's crisis intervention team trained to handle police situations involving such as the one involving Plaintiff. Specifically, Plaintiff contends that had the officers been properly trained regarding the existence and capabilities of the Bullhead City crisis intervention team, a different result may have occurred. Defendants challenge any such claim upon summary judgment.

To find municipal liability for civil rights violations under § 1983 for a failure to train, a plaintiff must prove that the defendant municipality has customs or policies which "'amount[] to deliberate indifference' to [his] constitutional right[s]" and that these policies are the "'moving force behind the constitutional violation[s].'" Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)). Inadequate police training may represent a municipal policy and serve as a basis for § 1983 municipal liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." See City of Canton, 489 U.S. at 388 (holding that failure to train may serve as the basis for § 1983 liability "[o]nly where [it] reflects a 'deliberate' or 'conscience' choice by a municipality - a 'policy' as defined by our prior cases"). For the policy at issue to be the "moving force" behind the deprivation, a plaintiff must show that "the injury would have been avoided had proper policies been implemented." Long v. County of Los Angeles, 442 F.3d 1178, 1190 (9th Cir. 2006) (citation omitted).

As with Plaintiff's other claims, the Court will deny Defendants' request for summary judgment with respect to Plaintiff's municipal liability theory. To successfully assert such a claim, as laid out above, the Plaintiff must establish that: (1) the officers were not

---

and/or police officers under . . . state law . . ., and 6 "Defendants are entitled to assert self-defense. Such defenses suffice to place Plaintiff on notice of such defenses.

- 9 -

adequately trained; (2) Bullhead City was deliberately indifferent to a clear need for such training; and (3) Bullhead City's failure to train the officers caused Plaintiff's injuries. With respect to the first element, both Defendants Polomski and Wensel testified that they were not aware of the existence of any police crisis intervention team available to handle situations involving suicidal or distraught individuals. (PSOF ¶ 40). However, according to the testimony of Officer Williamson, whom Plaintiff states he specifically requested during the confrontation with Defendants Polomski and Wensel, Bullhead City did have a hostage negotiation team which was essentially a "crisis negotiation unit" that responds to situations involving suicides and some domestic violence calls. (PSOF ¶ 41). Moreover, Officer Williamson testified that all officers in Bullhead City are trained to know the unit as well as other special tactical units. (PSOF ¶ 42). Such testimony suggests that Defendants Polomski and Wensel should have known about the special unit and called upon the unit when they initially encountered Plaintiff, who may have been suicidal. (DSOF ¶ 3,5). In addition, such a failure may derive from Bullhead City's failure to properly train based upon its deliberate indifference toward such situations, which its officers likely deal with on a fairly frequent basis. Lastly, based upon the record, it is presently a fact question as to whether Bullhead City's alleged failure to train can be said to be the cause of Plaintiff's injuries. In other words, had the Defendant officers been aware of such a special unit and requested such assistance from special unit handling suicide situations, the Plaintiff may not have been shot by Defendant Polomski.[3]

## V.     Summary

The Court will deny Defendants' request for summary judgment. The Court finds that there is a fact question associated with Plaintiff's excessive force claim against Defendant

---

[3] The Court finds it relevant to note that the Defendants, in their reply brief, argue only that Defendant Polomski's actions were reasonable to refute any claim for municipal liability. See Fairley v. Luman, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [o]fficer of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."). However, as stated above, the Court has denied Defendants' request for summary judgment on that issue.

- 10 -

Polomski and that qualified immunity does not apply to bar Plaintiff's claim. In addition, the same factual issue precludes summary judgment on Plaintiff's assault claims. Finally, the Court finds that Bullhead City is not entitled to summary judgment on Plaintiff's municipal liability. These claims will be decided by the finder of fact.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendants' Motion for Summary Judgment. (Dkt.#32).

**IT IS FURTHER ORDERED** setting this matter for a status hearing on October 9, 2007, at 4:30 p.m., at which time a trial date will be discussed.

DATED this 18th day of September, 2007.

_____
Mary H. Murguia
United States District Judge